No. 2013-1386

# United States Court of Appeals for the Federal Circuit

_____

TYCO HEALTHCARE GROUP LP AND MALLINCKRODT INC.,
PLAINTIFFS-APPELLEES


*v.*


MUTUAL PHARMACEUTICAL COMPANY, INC. AND UNITED RESEARCH
LABORATORIES, INC., DEFENDANTS-APPELLANTS

_____

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF NEW JERSEY*
*CASE NO. 2:07-CV-01299-SRC-CLW, JUDGE STANLEY R. CHESLER*

_____

**NONCONFIDENTIAL REPLY BRIEF FOR DEFENDANTS-APPELLANTS**

_____

JAMES F. HURST
*Winston & Strawn LLP*
*35 West Wacker Drive*
*Chicago, IL  60601*
*(312) 558-5600*
*jhurst@winston.com*

STEFFEN N. JOHNSON
CHARLES B. KLEIN
JOHN K. HSU
EIMERIC REIG-PLESSIS
*Winston & Strawn LLP*
*1700 K Street N.W.*
*Washington, D.C.  20006*
*(202) 282-5000*
*sjohnson@winston.com*
*cklein@winston.com*
*jhsu@winston.com*
*ereigplessis@winston.com*

*Counsel for Defendants-Appellants*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants Mutual Pharmaceutical Company, Inc. and United Research Laboratories, Inc. certifies the following:

1. **The full name of every party or amicus represented by me is:**

   Mutual Pharmaceutical Company, Inc.

   United Research Laboratories, Inc.

2. **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

   Mutual Pharmaceutical Company, Inc.

   United Research Laboratories, Inc.

3. **All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

   URL Pharma, Inc.

   Caraco Pharmaceutical Laboratories, Ltd.

   Sun Pharmaceutical Industries, Ltd.

4. **The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

   *Winston & Strawn LLP*: James F. Hurst; Steffen N. Johnson; Charles B. Klein; James S. Richter; John K. Hsu; Jeffrey P. Catenacci; Eimeric Reig-Plessis

   *Axinn, Veltrop & Harkrider LLP*: James D. Veltrop; Francis H. Morrison; Edward H. Mathias; Thomas K. Hedemann; Michael L. Keeley; Jeremy C. Lowe; James P. Doyle; Todd E. Brewer; Ithti T. Ulit

   *Sterns & Weinroth, P.C.*: Karen A. Confoy; Erica S. Helms

   *Fox Rothschild LLP*: Karen A. Confoy

Dated: OCTOBER 4, 2013

/s/ Steffen N. Johnson
STEFFEN N. JOHNSON
*Winston & Strawn LLP*
*1700 K St., NW*
*Washington, DC 20006*
*(202) 282-5000*
*sjohnson@winston.com*

*Counsel for Defendants-Appellants*
*Mutual Pharmaceutical Company, Inc.*
*and URL Research Laboratories, Inc.*

*Confidential Information Redacted*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY OF ABBREVIATIONS ................................................... vi

INTRODUCTION ............................................................................... 1

ARGUMENT ....................................................................................... 4

I.    Tyco cannot rehabilitate the district court's rejection of Mutual's claim that Tyco's patent infringement suit was a "sham." ............................ 4

    A.    When Tyco sued, it was settled law that an ANDA that defined the proposed drug to have a specific surface area outside the range claimed in the brand's patent precluded a finding of infringement. ........................................................................ 5

        1.    Tyco's attempt to distinguish Elan rests on factual disputes that Elan held were "not material" to infringement under §271(e)(2). ................................................ 6

        2.    Tyco's patents, which do not claim any particular testing method or bioavailability rate, cannot distinguish Elan. .......... 11

        3.    Tyco's 2001 memorandum confirms that it knew, when it sued, that generic manufacturers could avoid infringing ███████████████████████. ...................................... 12

        4.    Mutual is not asking to circumvent PRE's objective prong, and the information demonstrating that Tyco's suit was a sham was known to Tyco when it sued. .................. 15

    B.    Tyco lacked an objective basis for believing it could successfully defend its patent's validity. ........................................... 19

II.    Mutual raised at least a material factual dispute as to whether Tyco's citizen petition was a sham. ........................................................... 21

    A.    Tyco admits that the court below applied the wrong standard. .......... 21

# TABLE OF CONTENTS
## (continued)

Page

B. Tyco is not entitled to summary judgment under PRE's first prong.................................................................................................22

C. Mutual's evidence would permit a reasonable factfinder to find that Tyco filed its petition to block competition from Mutual............24

III. Tyco is not entitled to summary judgment on Mutual's Walker Process fraud claim........................................................................25

A. Mutual's evidence created a triable issue on Tyco's knowledge of Sandoz's fraud..............................................................................25

B. Mutual's evidence created a triable issue on whether Sandoz intended to defraud the PTO. ...........................................................27

CONCLUSION ........................................................................................29

## STATEMENT OF GENERAL NATURE OF REDACTED MATERIAL

Pursuant to Federal Circuit Rule 28(d)(1)(B), confidential information that is the subject of a protective order entered by the district court has been redacted in this brief. This information generally relates to the parties' research and development, regulatory approval, and internal business practices.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Torpharm, Inc.*,
  300 F.3d 1373 (Fed. Cir. 2002) ........................................................ 1, 5, 11, 18

*AstraZeneca AB v. Mylan Labs., Inc.*,
  2010 WL 2079722 (S.D.N.Y. May 19, 2010) .................................................. 10

*Aventis Pharma S.A. v. Hospira, Inc.*,
  675 F.3d 1324 (Fed. Cir. 2012) .......................................................................... 29

*Bayer AG v. Elan Pharm. Res. Corp.*,
  212 F.3d 1248 (Fed. Cir. 2000) ........................................... 1, 5-10, 12, 14, 18

*California Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ............................................................................................ 21

*Dippin' Dots, Inc. v. Mosey*,
  476 F.3d 1348 (Fed. Cir. 2007) ........................................................................ 29

*Glaxo Inc. v. Novopharm Ltd.*,
  110 F.3d 1249 (Fed. Cir. 1997) .................................................................. 9-10

*Harlow v. Fitzgerald*,
  457 U.S. 816 (1982) ............................................................................................ 24

*In re Brimoninide Patent Litig.*,
  643 F.3d 1366 (Fed. Cir. 2011) .................................................................... 8, 11

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 686 (2d Cir. 2009) .............................................................................. 21

*In re Flonase Antitrust Litig.*,
  795 F. Supp. 2d 311 (E.D. Pa. 2011) ............................................................... 22

*In re Relafen Antitrust Litig.*,
  346 F. Supp. 2d 362 (D. Mass. 2004) .............................................................. 13

*In re Wellbutrin SR Antitrust Litig.*,
  749 F. Supp. 2d 260 (E.D. Pa. 2010) ................................................................. 5

## TABLE OF AUTHORITIES
### (continued)

**Page**

*JHW Enters., Inc. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ...........................................................12

*Kaiser Found. Health Plan Inc. v. Abbott Labs. Inc.*,
  552 F.3d 1033 (9th Cir. 2009) ............................................................28

*Konradi v. United States*,
  919 F.2d 1207 (7th Cir. 1990) ..............................................................7

*MCI Commc'ns Corp. v. AT&T Co.*,
  708 F.2d 1081 (7th Cir. 1983) .........................................................2, 5

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1072 (Fed. Cir. 1998) ..........................................................29

*Paragon Podiatry Lab., Inc. v. KLM Labs. Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993) ..........................................................28

*Phillips v. AHW Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..........................................................12

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 63 (1993)......................................................................13, 19

*Purdue Pharma L.P. v. Endo Pharms. Inc.*,
  438 F.3d 1123 (Fed. Cir. 2006) ..........................................................28

*Riehl v. Travelers Ins. Co.*,
  772 F.2d 24 (3d Cir. 1985) .............................................................13, 25

*SEB S.A. v. Montgomery Ward & Co.*,
  594 F.3d 1377 (Fed. Cir. 2010) ........................................................4, 26

*Staples v. United States*,
  511 U.S. 615 (1994)...........................................................................27

*Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*,
  2013 WL 5356823 (Fed. Cir. Sept. 26, 2013) ....................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) .........................................................28

*Tyco Healthcare Grp. LP v. Mutual Pharm. Co.*,
642 F.3d 1370 (Fed. Cir. 2011) .................................... 3, 16, 19-20, 26

*United States v. Mohsen*,
2005 WL 3288651 (N.D. Cal. Dec. 2, 2005)......................................20

*United States v. Santos*,
553 U.S. 521 (2008)...............................................................4, 27

*Walker Process Equip., Inc. v. Food Machinery Corp.*,
382 U.S. (1965)...............................................................3, 25, 27

*Warner-Lambert v. Apotex Corp.*,
2003 WL 22887861 (N.D. Ill. Dec. 4, 2003).....................................10

## STATUTES

21 U.S.C. §331(d) ....................................................................1, 6

35 U.S.C.:
§271(a) ........................................................... 1-2, 5, 8-9, 18
§271(b) ...........................................................................8
§271(e)(2) ............................................... 1, 2, 5-10, 12, 14-19
§271 (e)(2)(A) ....................................................................1

## OTHER AUTHORITIES

Areeda & Hovenkamp, *Antitrust Law* (2013)....................................8, 25

Fed. Rule Civ. P. 11 .................................................................10

Fed. Rule Civ. P. 52(c)..............................................................16

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ANDA | Abbreviated New Drug Application |
| API | Active Pharmaceutical Ingredient |
| BNF | British National Formulary |
| FDA | Food & Drug Administration |
| $m^2/g$ | square meters per gram |
| mg | milligrams |
| Mutual | Defendants-Appellants Mutual Pharmaceutical Company, Inc. and United Research Laboratories, Inc. |
| PTL | Particle Technology Labs, Ltd. |
| PTO | Patent and Trademark Office |
| Tyco | Plaintiffs-Appellees Tyco Healthcare Group LP and Mallinckrodt Inc. |
| §271(a) | 35 U.S.C. §271(a) |
| §271(e)(2) | 35 U.S.C. §271(e)(2) |
| R&D | Research & Development |
| SSA | Specific Surface Area |

# INTRODUCTION

***Sham litigation—Infringement.*** The central deficiency in Tyco's brief is its failure to recognize the difference between §271(e)(2) and §271(a) of the Patent Act. Citing the parties' disputes related to the "appropriate test protocol for measuring SSA" (Br. 48), Tyco says it had grounds to sue. But Tyco's patents claim no testing method. And as *Elan* held years before Tyco sued, "under §271(e)(2)(A)," where an ANDA "recites that the SSA of [the generic's] drug will be … above [the claimed range]," it "directly addresses the question of infringement," making that issue "'straightforward.'" 212 F.3d at 1248, 1250 (citation omitted).

In so holding, *Elan* rejected Bayer's argument that, because "Elan ha[d] not specified a validated test protocol or test equipment to measure [its] SSA," "there [were] genuine issues of material fact as to whether Elan w[ould] be able to comply with its SSA specification and thus produce a noninfringing product." *Id*. at 1248. As the Court explained, "factual issues as to whether Elan can comply with its specification … are not material … because 21 U.S.C. §331(d) prohibits Elan from selling any product that does not meet its ANDA's requirements." *Id*. at 1250. And when Tyco sued, this Court had not only decided *Elan*, but reaffirmed that "summary judgment of no literal infringement [is] properly granted where the ANDA specification require[s] the proposed drug to have a specific surface area outside the [claimed] range." *Torpharm*, 300 F.3d at 1373 (citing *Elan*).

*Confidential Information Redacted*

Thus, even assuming the parties' dispute over how to measure SSA would be relevant to a claim for direct infringement under *§271(a)*, Tyco had no objective basis for invoking *§271(e)(2)*. We understand why Tyco *wanted* to do so: Section 271(e)(2) effectively gave Tyco an automatic, untested, bondless injunction barring competition from Mutual for what amounted to 15 months. But as Tyco admitted in 2001, competitors could avoid infringing Tyco's patents ███████████████ ████████████████████████████████. And even "a *single* claim … can be 'sham litigation' actionable under the antitrust laws." *MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081, 1154 (7th Cir. 1983).

Faced with these difficulties, Tyco accuses us of "hindsight-based" bias and of attempting to avoid *PRE*'s "objective" prong. Br. 14, 34. But every point on which we rely—*Elan*, Mutual's ANDA, Mutual's notice letter, and Tyco's 2001 admission—was known to Tyco *before* it sued. Thus, an objective litigant would have realized that it could not reasonably expect success under §271(e)(2).

**Sham Litigation—Obviousness.** In hopes of establishing an objective basis for its obviousness defense, Tyco—echoing the district court—cites the presumption of patent validity and the "clear and convincing evidence" standard. Br. 55-56. But Tyco does not say how, if these procedural devices could defeat a sham claim, a party could *ever* prove that a patent suit was baseless. And Tyco ignores this Court's holding that "[o]rdinarily, 'where,'" as here, "'there is a range [of dos-

es] disclosed in the prior art, and the claimed invention falls within that range, there is a presumption of obviousness.'" 642 F.3d at 1372 (citation omitted).

Noting that "Mutual did not identify the BNF reference … until July 2009," Tyco says "[t]here was no evidence of invalidity … at the time of filing." Br. 56. But Mutual presented evidence that, when Tyco sued, it knew of the "Memo for the Record," which explained that, "'in Great Britain, temazepam doses from 5-15 mg are recommended for geriatrics.'" A14, A15; *see* 642 F.3d at 1372 & n.2. And given that low-dose temazepam "had been sold abroad for more than a decade" (*id*. at 1374), "use of a 7.5 mg dose … was not merely an *obvious* solution"; "it was a *known* solution." A3818 (emphasis added).

***Sham Litigation—Citizen Petition.*** Tyco admits that the district court applied the wrong standard in analyzing whether its citizen petition was objectively baseless. Br. 58 & n.16. Moreover, Tyco never even discusses FDA's conclusion that the petition contained "no evidence," was based "entirely on uncorroborated generalities and theoretical speculation," and sought relief contrary to "more than two decades" of FDA practice. A6053-55. When viewed together with the petition's timing—one week before the 30-month stay was to expire—the record easily reflects a material dispute as to whether Tyco's petition was a sham.

***Walker Process.*** On the knowledge element of *Walker Process* fraud, Tyco charges that Mutual relies on "*constructive knowledge* based on *inferences* drawn

3

*Confidential Information Redacted*

from *circumstantial evidence*." Br. 65. But Mutual's evidence easily shows "deliberate indifference" to the "known risk" of fraud—"a form of actual knowledge." *SEB S.A.*, 594 F.3d at 1377. And "direct evidence of knowledge is not required." *Id.* at 1380. Indeed, "knowledge must almost always be proved[] by circumstantial evidence." *Santos*, 553 U.S. at 521.

Aware of this difficulty, Tyco says Mutual cannot point to any evidence that Sandoz *intended* to defraud the PTO. But Mutual's evidence shows that Sandoz knew that its claimed invention used the same SSA and particle size as its own Restoril capsules, knew that low-dose temazepam was used overseas, and knew that these facts were material to patentability—yet ████████████████████████ ███████████. This evidence easily precludes summary judgment.

Mutual's antitrust claims should proceed to trial.

## ARGUMENT

## I. Tyco cannot rehabilitate the district court's rejection of Mutual's claim that Tyco's patent infringement suit was a "sham."

Tyco acknowledges that the district court "erred" in believing "that Mutual had never moved for summary judgment based on *Elan*," yet insists that the ruling below "was not actually premised on [that] belief," but rather "on *numerous* findings." Br. 51-52. Without exception, however, every "finding" that Tyco cites in attempting to distinguish *Elan* is relevant only to whether Mutual could produce a *commercial product* that complies with its ANDA. Where the ANDA defines the

proposed drug's SSA as outside the claimed range, such factual differences are "not material" to infringement *under §271(e)(2)*. *Elan*, 212 F.3d at 1250. A reasonable litigant would have known that when Tyco sued.

Tyco thus ignores the basic difference between §271(e)(2) and §271(a), and the basic principle that "a *single* claim … can be 'sham litigation.'" *MCI*, 708 F.2d at 1154. Indeed, "separate consideration of each patent claim" is critical where "[one] claim, in and of itself, was sufficient to cause antitrust damage because it resulted in the continuation of [the brand's] 30 month patent protection stay." *In re Wellbutrin SR Antitrust Litig.*, 749 F. Supp. 2d 260, 266-67 (E.D. Pa. 2010). That is what happened here.

### A. When Tyco sued, it was settled law that an ANDA that defined the proposed drug to have a specific surface area outside the range claimed in the brand's patent precluded a finding of infringement.

When Tyco sued Mutual, this Court had *twice* ruled that "an ANDA specification defining a proposed generic drug in a manner that directly addresses … infringement will control" the §271(e)(2) infringement analysis, and that "summary judgment of no literal infringement [is] properly granted where the ANDA specification require[s] the proposed drug to have a specific surface area outside the [claimed] range." *Torpharm*, 300 F.3d at 1373 (citing *Elan*, 212 F.3d at 1249-50). *Elan* deemed that issue "'straightforward.'" 212 F.3d at 1250 (citation omitted). And a reasonable litigant in Tyco's shoes would have known that *Elan* governed.

5

### 1. Tyco's attempt to distinguish *Elan* rests on factual disputes that *Elan* held were "not material" to infringement under §271(e)(2).

a.  Tyco dismisses *Elan* on the basis that "nothing in [that] opinion suggest[s] that the parties in that case *disputed* the appropriate test call parameters for measuring SSA." Br. 48.  But Tyco's argument ignores Bayer's contention that, because "Elan ha[d] not specified a validated test protocol or test equipment to measure the SSA of its nifedipine," "there [were] genuine issues of material fact as to whether Elan will be able to comply with its SSA specification and thus produce a noninfringing product." 212 F.3d at 1248; *cf.* ███████████████████ ████████████████████████████████████. Tyco also ignores the Court's answer, which was clear and categorical: "Although there may be factual issues as to whether Elan can comply with its specification, *they are not material … because 21 U.S.C. §331(d) prohibits Elan from selling any product that does not meet its ANDA's requirements*." 212 F.3d at 1250 (emphasis added).

Tyco says it "was not required to accept the surface area representations presented in Mutual's ANDA as proof of non-infringement." Br. 46.  But that is exactly what *Elan* says Tyco had to accept.  All the Court needed to know to resolve Bayer's §271(e)(2) claim was that "the ANDA … recite[d] that the SSA of Elan's drug will be 5 $m^2$/g or above." *Id*.  That made "'the ultimate question of infringe-

6

*Confidential Information Redacted*

ment … straightforward.'" *Id.* (citation omitted).  And the ANDA here is even clearer:  It specifies an SSA at least *twice* that of Tyco's.  Opening Br. 35 n.3.

It is untenable to say that this case is "factually *distinguishable*" from *Elan* (Tyco Br. 47-48) because the generic there did not "specif[y] a validated test protocol" (212 F.3d at 1248), whereas Mutual used ██████████████████ ████████████████.  "[E]very case is factually different from every other case," but "unless the factual differences between [two cases] are connected with a difference in principle," there "is no warrant for refusing to follow [the first case] in th[e] [second] case."  *Konradi v. United States*, 919 F.2d 1207, 1212 (7th Cir. 1990).[1]

Here, the parties' difference over how to test SSA is not a difference in principle—at least not for purposes of §271(e)(2).  As in *Elan*, quarrels about the proper "test protocol … to measure the SSA" are "factual issues as to whether [the generic] can comply with its specification," and "are not material."  212 F.3d at 1248, 1250.  Any objective litigant would have known this when Tyco sued.  And "a monopolist's careless challenges made without adequate inquiry into underlying

---

[1] Tyco's assumption that the generic in *Elan* did not specify a test protocol is questionable.  Bayer complained that Elan did not submit "a *validated* test protocol" (*id.* at 1248 (emphasis added))—which is Tyco's complaint here (Br. 48).  Regardless, any such difference between *Elan* and this case is "not material."  212 F.3d at 1250.

facts or law should … be regarded as improper" under the "objective baselessness" test.  Areeda & Hovenkamp, *Antitrust Law* ¶706b (2013).

Hoping to draw the Court further into the weeds of irrelevant details, Tyco notes that it ███████████████████████████████████ ████████████████████████████████ and that "scientific experts could (and did) disagree" on "[t]he method to be used for [SSA] measurement." Br. 45, 52.  Here again, however, Tyco's experience with PTL and its expert's views on how to "measure the SSA" at most raise "factual issues as to whether [the generic] can comply with its specification"—issues "not material" to infringement under §271(e)(2).  *Elan*, 212 F.3d at 1250.[2]

b.  Tyco's suggestion that it could not fully assess its basis for suing before "the period for filing the infringement suit expired" because it "did not have any sample of Mutual's (commercial batch)" (Br. 52) is equally misguided.  To begin with, Tyco declined Mutual's offer to review the only product samples available. A5996-6006.  But in any event, infringement under §271(e)(2) was governed by Mutual's ANDA; any commercial batch of Mutual's product was relevant only to

---

[2]  Tyco omits to note (Br. 48 & n.10) that PTL's "inconsistent" results were for ███ ████████████████████████████████.  By contrast, PTL's re-peat testing on ███████████  produced highly consistent results—which sug-gests it was Tyco's temazepam, not PTL's testing, that was "inconsistent."  *Id.*  In addition, for all of its talk about the dispute over testing, Tyco never inquired about Mutual's test protocol during the 45-day waiting period.  A5996-6001.

infringement under §271(a).  *Brimonidine*, 643 F.3d at 1377 (Sections 271(a) and (b) govern "commercial sale").  Further, §271(a) has no filing deadline, and Tyco did *not* have to invoke §271(e)(2) to assert that Mutual's commercial product infringed.

Rather, Tyco could have done what patentees in other markets must do—invoke §271(a) and seek damages or an injunction, rather than an automatic, bondless, 30-month stay of generic competition.  To be sure, brands are entitled to the 30-month stay where *the ANDA* provides an objective basis for alleging infringement.  Short of that, however, brands' patent rights at this early stage are protected by Hatch-Waxman's "prohibit[ion] [on] selling any product that does not meet its ANDA's requirements"—which generics violate on pain of extensive "civil" and "criminal sanctions."  *Elan*, 212 F.3d at 1250, 1249.

c.  Aware that *Elan* and *Torpharm* clearly foreclosed its §271(e)(2) claim, Tyco says the law in 2007 was "unsettled" because *Elan* "did not overrule *Glaxo*," which (like *Elan*) stated that "'[the infringement] inquiry must be based on *all of the relevant evidence*.'"  Br. 35, 49 (quoting *Glaxo*, 110 F.3d at 1249) (Tyco's emphasis)).  This argument ignores two critical points.

First, *Elan* did not fail to analyze *Glaxo*, creating a situation in which either of two competing rules might plausibly govern.  Rather, *Elan* expressly distinguished *Glaxo*, explaining that "the biobatch [there] was properly considered be-

9

cause the ANDA specification … did not define the compound in a manner that directly addressed the issue of infringement." 212 F.3d at 1250. "Here, however," the Court continued, "the ANDA directly addresses the question of infringement; it recites that the SSA of Elan's drug will be 5 $m^2/g$ or above. Thus, we have before us an ANDA specification that, in the words of *Glaxo*, describes a 'well-defined compound,' and thus 'the ultimate question of infringement is … straightforward.'" *Id*. (quoting *Glaxo*, 110 F.3d at 1569). So too here.

Second, whatever else "the relevant evidence" might include in some hypothetical case, *Elan* confirmed that in cases like this—where the ANDA "recites that the SSA of [the] drug will be … above [the claimed range]"—"factual issues as to whether [the generic] can comply with its specification … *are not material*." *Id*. at 1250 (emphasis added). Thus, the very evidence that Tyco deems "relevant" (Br. 49) is, post-*Elan*, "not material" to infringement under §271(e)(2). That is why Tyco cannot hide behind the fact that courts sometimes grant patentees "leeway" to "investigate" claims via discovery "even where an ANDA might appear dispositive." Br. 49.[3] And if *Elan* had left any doubt, *Torpharm* reaffirmed that "sum-

---

[3] Tyco cites no case in which the very basis for the argument that the ANDA was not "dispositive" was something that this Court had already declared "not material" to infringement under §271(e)(2). In *AstraZeneca AB v. Mylan Labs., Inc*., 2010 WL 2079722, *4 (S.D.N.Y. May 19, 2010), the court never *discussed* the ANDA's content, let alone whether it directly addressed infringement. Further, "th[e] Court *denied* [the generic's] motion for summary judgment of non-infringement" and it

mary judgment of no literal infringement [is] properly granted where the ANDA specification require[s] the proposed drug to have a specific surface area outside the [claimed] range." 300 F.3d at 1373. *See also Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*, 2013 WL 5356823, *6 (Fed. Cir. Sept. 26, 2013); *Brimonidine*, 643 F.3d at 1377-78 (both unanimously reaffirming this reading of *Elan*).

## 2.   Tyco's patents, which do not claim any particular testing method or bioavailability rate, cannot distinguish *Elan*.

Nor can *Elan* be distinguished based on the patents at issue. Citing Example 1 from the patents' common specification, Tyco seeks to create the misimpression that its patents claim a testing method, generating "a claim construction dispute over whether Mutual's alternative test protocol was within the claim's scope." Br. 50.[4] But the method identified in Example 1 is *not* found in the patents' claims. Rather, as the district court held, Tyco is attempting to import a claim limitation from an example in the specification—"contrary to established Federal Circuit principles of claim construction." A376. Indeed, the court noted that "Plaintiffs

---

took "a 42-day bench trial" to prove a "hard-fought and close" non-infringement defense. *Id.*

In *Warner-Lambert v. Apotex Corp.*, 2003 WL 22887861, *5 (N.D. Ill. Dec. 4, 2003), a Rule 11 case, the ANDA listed a foreign entity as manufacturer but did not specify whether the infringing product was used at any step in the process domestically. The court thus rejected arguments that the infringement suit was baseless because the infringing API, an intermediate for making a noninfringing product, was used only overseas.

[4] ████████████████████████████████████████████████████████████
████ ; Br. 52 ("the patents referred to methods of measuring SSA").

cite no law in support of th[eir] position," and that it would "belabor the obvious" to explain further why Tyco was wrong.  A376, A378.

Tyco's argument today (Br. 50) still lacks supporting citations, and extensive precedent forecloses it.  This Court "ha[s] repeatedly warned against confining the claims" to "specific embodiments" described in the "specification."  *Phillips v. AHW Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (collecting cases).  The Court "do[es] not import limitations into claims from examples."  *JHW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005).

Similarly, *Elan* cannot be distinguished on the ground that "[s]urface area may affect bioavailability" (Br. 45), *i.e.*, the rate at which the body absorbs a drug.  Tyco's patents do not mention bioavailability.  A3982-94.  Thus, even if the SSA of Mutual's drug affected its bioavailability—and studies that Tyco possessed suggested otherwise (*infra* at 23-24)—that would be irrelevant to whether Tyco had probable cause to assert *patent infringement*.

> **3.    Tyco's 2001 memorandum confirms that it knew, when it sued, that generic manufacturers could avoid infringing ███████████████████████████████.**

The objective baselessness of Tyco's §271(e)(2) claim is further confirmed by its 2001 memorandum admitting how easily Tyco's patents could be designed around.  A5942.  By Tyco's lights, this memorandum "speaks only" to "whether it was *possible* that Mutual's proposed ANDA would *not* infringe," not to "whether

*Confidential Information Redacted*

there was an objectively reasonable basis for believing it *might* infringe." Br. 54.

Read in context, however, the memorandum cannot be so easily dismissed, and any

dispute over Tyco's knowledge is "particularly inappropriate for resolution by

summary judgment." *Riehl*, 772 F.2d at 24; *see PRE*, 508 U.S. at 63 ("probable

cause" is "a matter of law" where "there is no dispute over the predicate facts of

the underlying proceeding"). What an "ordinary chemist" would believe is not

dispositive where the patentee's "own scientists" knew otherwise. *Relafen*, 346

F. Supp. 2d at 362 & n.7.

The memorandum's author, who spoke for an entire ██████████████████

did not simply say it was "possible" to design around the patents. ███████. He said

it was ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. In

other words, a generic could easily avoid infringement by ████████████████

████████████████████████████. This could be done, moreover, while

████████████████████████████████████████.

As its ANDA confirmed, that is exactly what Mutual did. ████████████

████████████████████████████████████████████████████████

████████████████████████████████ ██████.[5]

_____

[5] The relevant paragraph stated in full: ████████████████████████████████

████████████████████████████████████████████████████████████

*Confidential Information Redacted*

Tyco therefore tries to change the subject, arguing that we avoid mentioning the memorandum's reference to ███████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████. If anything, this sentence identifies *another* means of designing around the patent: Generics might ██████ avoid infringement by producing a drug with ████████████████████████████████████████████████ ███████████████████████████████. What the memorandum does *not* state, however, is that generics must ██████████████ to maintain bioequivalence when ███████████████████.

The memorandum thus confirms how easily Mutual could do what its ANDA said it would do: make a drug with a noninfringing SSA. But even on the implausible assumption that Tyco doubted this was feasible, that would be irrelevant for purposes of §271(e)(2). Mutual's ANDA clearly defined the compound that Mutual could sell, making infringement under §271(e)(2) "'straightforward.'" *Elan*, 212 F.3d at 1250 (citation omitted).

--------

████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

*Confidential Information Redacted*

> **4.    Mutual is not asking to circumvent *PRE*'s objective prong, and the information demonstrating that Tyco's suit was a sham was known to Tyco when it sued.**

a.  Faced with its 2001 admission that generics could avoid infringing ███ ████████████████████████████, Tyco suggests that Mutual asks to "skip the objective probable cause threshold" and "advocates reversal … based on a strictly subjective standard."  Br. 40, 41, 43.  That is absurd.

As our opening brief confirms, it is common ground that *PRE*'s "objective" prong "requires facts to be assessed" both "from the point of view of a reasonable litigant" and "*at the time it* filed its petition."  Tyco Br. 41.[7]  Accordingly, we have repeatedly stressed four key points that show why Tyco's §271(e)(2) claim was objectively baseless when filed: (a) *Elan* was controlling; (b) Mutual's ANDA required a noninfringing SSA; (c) Mutual's notice letter explained why *Elan* precluded any finding of infringement; and (d) as Tyco knew, Mutual could avoid infringing ████████████████████████████████.  Each of these points was known to Tyco *before* it sued.

---

████████████████████████████████████████████
████████████████████████████████████████████.

[7]  Opening Br. 30-31 (a claim is "objectively baseless" under "*PRE*'s first prong" if "no reasonable litigant could realistically expect to secure favorable relief"; "plaintiffs must have 'probable cause' to file suit" (quoting *PRE*, 508 U.S. at 60, 62)).  Contrary to Tyco's assertion (Br. 33), *PRE* does not require that objective baselessness be established by "clear and convincing proof."  Br. 33.

The objective nature of *PRE*'s first prong, moreover, does not mean this Court must ignore the "judicial analysis conducted [below]." Tyco Br. 41. To be sure, Mutual's successful defense of Tyco's patent claims does not itself establish that Tyco's suit was a sham, and this Court must independently assess the clarity of *Elan*. But the decision below remains relevant insofar as it is persuasive. And the court's forceful ruling that *Elan* required entering judgment for Mutual under Rule 52(c) debunks the court's principal basis for granting Tyco summary judgment—a misunderstanding that Mutual never sought judgment based on *Elan*.

Noting that infringement was "extensively-litigated" below, Tyco insists that it could not "have known what facts would be revealed during discovery" or how the district court "would reconcile conflicting opinions from experts not yet disclosed." Br. 42, 14. These points might be relevant if the case had turned on facts unearthed in discovery or an expert opinion unknown to Tyco when it sued. But it did not. "The district court [ruled] based on uncontroverted evidence that Mutual's ANDA disclosed a product that could not literally infringe the '954 patent because the ANDA required the surface areas of the crystalline temazepam to be at least 2.2 square meters per gram." *Tyco*, 642 F.3d at 1371.

The court below thus granted Mutual judgment on its §271(e)(2) claim based on *Elan* and Mutual's ANDA—materials known to Tyco when it sued. A2121-28. It forcefully "reject[ed] Tyco's argument that *Elan* does not apply," its theory "that

infringement should be determined based on the product samples rather than the ANDA," and its "argument … that 'Mutual's to-be-launched product, when tested properly, does not meet ANDA spec[ifications] for specific surface area.'" A2122, A2127 (citation omitted). Why? Because these points "overlook[] the key inquiry that *Elan* requires": whether "the ANDA specification … directly addresses the issue of infringement." A2127. On *that* question, "Tyco did not offer evidence" and was "silent." A2127, A2121.

We reiterate the district court's analysis because it was (1) objectively (and indisputably) correct, and (2) based solely on information available to Tyco when it sued. The court could have ruled before discovery, or when Mutual first sought summary judgment. Opening Br. 15. That, of course, is why Tyco asks this Court to avert its eyes from the rulings below.

b.  Tyco also says it could not reasonably have "fully develop[ed] its case within the 45-day time limit" provided by §271(e)(2). Br. 26. Here again, however, our position—like the district court's entry of judgment based on *Elan*—rests entirely on facts known to Tyco *before* it sued. Any "'reasonable' pre-suit investigation" (Tyco Br. 43) would have required reviewing *Elan* and Mutual's ANDA, which Mutual's notice letter highlighted. This is not a case where "the patentee's pre-suit investigation of an ANDA reveal[ed] 'neither evidence of infringement or

non-infringement.'"  Tyco Br. 44 (citation omitted).  Under *Elan*, the ANDA itself clearly established non-infringement.

As noted above, moreover, Tyco had to sue within 45 days only to obtain the benefit of §271(e)(2)'s automatic 30-month stay of FDA approval.  It did not have to sue within that time frame to seek damages or an injunction under §271(a).  Tyco blurs this distinction, stating:  "Tyco had just 45 days after receiving the Paragraph IV certification letter … to file a lawsuit to enforce the Tyco Patents, *thereby inducing* an automatic thirty-month statutory stay of … FDA's approval."  Br. 26 (emphasis added).  Not so.  Tyco could (and should) have refrained from invoking §271(e)(2) and invoked §271(a).  Tyco's argument simply underscores its failure to recognize the critical difference between those sections.

\* \* \* \* \*

The notion that "the [district] court's application of *Elan* … was not predictable at the time of filing" (Tyco Br. 52) is untenable.  *Elan*'s holding was precisely on point.  The Court there held that disputes over how to "measure the SSA" were "not material."  212 F.3d at 1248, 1250.  Mutual's ANDA specified an SSA at least *100 percent* greater than Tyco's.  Tyco admitted in *2001* that its patents could be designed around ██████████████████████████████.  And *Torpharm* had reaffirmed that "summary judgment of no literal infringement [is] properly

granted where the ANDA specification require[s] the proposed drug to have a specific surface area outside the [claimed] range."  300 F.3d at 1373.

Thus, a "reasonable litigant" with Tyco's knowledge would have known, when Tyco sued, that it could not "realistically expect to secure favorable relief" under §271(e)(2).  *PRE*, 508 U.S. at 62.  Indeed, if directly controlling authorities like *Elan* and *Torpharm* do not render a claim objectively baseless, it is hard to imagine when the sham litigation doctrine would ever apply.

### B. Tyco lacked an objective basis for believing it could successfully defend its patent's validity.

Equally feeble is Tyco's defense of the district court's ruling on the portion of Mutual's "sham litigation" counterclaim relating to obviousness.  Tyco largely repeats the district court's points, but without supporting analysis.

For example, Tyco reiterates the district court's (undisputed) points that "patents are presumptively valid" and must be invalidated "by clear and convincing evidence."  Br. 55, 56.  Yet Tyco ignores our showing that, if these procedural devices did the work that Tyco insists they do, defendants could *never* establish that lawsuits to enforce invalid patents were objectively baseless.  Opening Br. 42-43.  Similarly, Tyco ignores this Court's explanation that "'where,'" as here, "'there is a range [of doses] disclosed in the prior art, and the claimed invention falls within that range, *there is a presumption of obviousness*.'"  *Tyco*, 642 F.3d at 1372 (citation omitted) (emphasis added).  And Tyco does not even attempt to defend the no-

tion that it was insulated from liability because it "acquired the patents from [Sandoz]." A12.

Noting that "Mutual did not identify the BNF reference … until July 2009," Tyco says "[t]here was no evidence of invalidity … at the time of filing." Br. 56. That is false. Mutual's evidence showed that, when Tyco sued, it had reviewed the Memo for the Record, which disclosed the information that provided the basis for the later obviousness rulings. Opening Br. 43; *Tyco*, 642 F.3d at 1372 & n.2.

Faced with this inconvenient fact, Tyco asserts: "Rarely … is obviousness so clear that a reasonable litigant can predict a particular finding." Br. 57. But Tyco's lone supporting citation, an unreported district court decision, involved "prior art" that was not "fully illuminated" in the lawsuit's "early stages." *United States v. Mohsen*, 2005 WL 3288651, *4 (N.D. Cal. Dec. 2, 2005). Here, quite apart from Mutual's disclosures during discovery, Tyco knew when it sued what the prior art taught. Indeed, Tyco's argument conflicts with its insistence that "the facts be assessed as they appeared … *at the time it* [*sued*]." Br. 41 (emphasis altered). And given its knowledge on that date, Tyco is not saved by the fact that Mutual's notice letter did not flag the BNF reference. Tyco Br. 57.

Once it is clear what Tyco knew in 2007, it becomes clear that Tyco had no objective basis to sue. As this Court held, "the only [claim] limitation … not fully disclosed by the prior art Restoril® capsules is the lower dosage," but the BNF ref-

erence (and others) disclosed the lower dosage and "5 mg temazepam hard cap-sules had been sold abroad for more than a decade."   642 F.3d at 1372, 1374. Thus, "use of a 7.5 mg dose … was not merely an *obvious* solution"; "it was a *known* solution."   A3818 (emphasis added).   Tyco's contrary views were, as this Court and the court below put it, "silly" and "incomprehensible."  Opening Br. 41.

## II.  Mutual raised a material factual dispute as to whether Tyco's citizen petition was a sham.

Tyco also fails to rehabilitate the district court's rejection of Mutual's anti-trust challenge to Tyco's citizen petition.

### A.  Tyco admits that the district court applied the wrong standard.

For starters, Tyco acknowledges that courts "universally adopt the *PRE* two-tier test to administrative petitions" (Br. 58 n.16)—which confirms that the district court erred in "expressly limit[ing] [*PRE*] to litigation."  A12.  Tyco says this error is "of no moment" because the district court "acknowledg[ed] that cases of 'abuse' of administrative (non-litigation) petitions 'should not acquire [*Noerr-Pennington*] immunity.'"  Br. 58 (quoting A12).  But the outmoded "abuse" standard was lim-ited to cases where "a *pattern* of baseless, *repetitive* claims … le[d] the factfinder to conclude that the administrative and judicial processes ha[d] been abused."  *Cal-ifornia Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) (em-phasis added).   Under *PRE*, by contrast, "a single citizen petition may trigger the

21

sham exception" (*DDAVP*, 585 F.3d at 686)—which becomes critical where, as here, only one petition was filed.

## B.  Tyco is not entitled to summary judgment under *PRE*'s first prong.

On *PRE*'s first prong, Tyco does not discuss, much less provide reason to question, FDA's finding that Tyco's petition (1) "provided no evidence from clinical trials, pharmacokinetic studies, bioequivalence testing, or any other source," (2) "relie[d] entirely on uncorroborated generalities and theoretical speculation," and (3) advocated requirements contrary to "more than two decades" of FDA practice.  A6053-55.  Tyco dismisses FDA's considered judgment because it was "reached *after* [the petition's] filing."  Br. 59.  But our point in discussing FDA's findings is not to suggest that the petition's "ultimate (lack of) success" (Tyco Br. 58-59), without more, establishes that it was a sham.  We cite FDA because its conclusion is persuasive—and based entirely on facts that a reasonable petitioner would have known when Tyco filed its petition.

Tyco dismisses Mutual's expert testimony—that the unprecedented requirements Tyco sought to impose on Mutual's ANDA were irrelevant to generic drug approval (A6428, A6430-38)—as "subjective," "post hoc," and "immaterial."  Br. 60.  Like FDA's decision, however, "expert testi[mony] that [the relief sought] would be contrary to FDA practice" raises a material dispute as to whether Tyco's petition was objectively baseless when filed.  *Flonase*, 795 F. Supp. 2d at 311-12.

22

*Confidential Information Redacted*

Having admitted in 2001 that generic manufacturers could ███████████

███████████████████████████████████████████████████████████

███████████████, Tyco's 2009 petition maintained that Mutual's product was "not bioequivalent to Restoril because [of] [its] significantly greater specific surface area" (A6050). Desperate to downplay this contradiction, Tyco says ████

███████████████████████████████████████████████████████████

███████████. But as we have explained (at 14), the cited passage identifies an *alternative* means of producing noninfringing drugs—it does not diminish Tyco's admission that generics can avoid infringement and retain ███████████

████████████████████████████████[8]

Equally unavailing is Tyco's reference to Mutual's expert testimony, during the injunction hearing, concerning the relationship between SSA and bioavailability. Br. 59. As FDA explained, that testimony "was in the specific context of technical infringement issues, not bioequivalence." A6056. Further, a study that Tyco produced before filing its petition found ███████████████████████

███████████████████████████████████ concluding that ███████████

---

[8] This answers Tyco's argument that ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ ██ ███[9]

Finally, Tyco knew upon filing its petition that FDA had already deter-mined—based on extensive drug dissolution studies in the ANDA—that Mutual's product *is* bioequivalent to Restoril.  A6429-30.  Yet Tyco's petition did not chal-lenge FDA's analysis or these studies.  Nor does Tyco do so here.

### C.    Mutual's evidence would permit a reasonable factfinder to find that Tyco filed its petition to block competition from Mutual.

Tyco also fails to defend the district court's erroneous holding that Mutual "sa[id] nothing to support an inference that [Tyco's petition] was an attempt to in-terfere directly with [competition]."  A12.

Tyco submitted its petition *one week* before the 30-month stay expired—when it had known Mutual's SSA for 2.5 years.  Tyco says a protective order pro-hibited disclosing Mutual's SSA sooner.  Br. 59 n.17, 60.  But the protective order was entered in July 2007, five months *after* Mutual's notice letter disclosed the SSA.  A100, A5971.  And Mutual *publicly* disclosed it in January 2008, 19 months before Tyco's petition.  A205.  A reasonable factfinder could easily find that Tyco

---

[9]  Tyco ignores Mutual's expert testimony that any effect of SSA on bio*availability* would not preclude a finding of bio*equivalence* (the only requirement for generic approval) (A5159), as FDA allows a 20 percent variance in bioavailability between branded and generic drugs (A6051-52).

*Confidential Information Redacted*

delayed its petition to block competition, particularly since "questions of subjective intent so rarely can be decided by summary judgment." *Harlow*, 457 U.S. at 816.

Having ignored FDA's analysis, Tyco nonetheless insists that our evidence of anticompetitive intent "is based exclusively on [its] *timing*, not [its] substance." Br. 60. Not so. The ███ memorandum and the study showing ████████ ██████████████████████████████████████████████████ both of which Tyco ignores, support a finding that Tyco knew its petition lacked merit.

## III. Tyco is not entitled to summary judgment on Mutual's *Walker Process* fraud claim.

Unable to dispute that "issues of knowledge and intent are particularly inappropriate for resolution by summary judgment" (*Riehl*, 772 F.2d at 24), Tyco fails to rehabilitate the district court's rejection of Mutual's *Walker Process* claim.

### A. Mutual's evidence created a triable issue as to Tyco's knowledge of Sandoz's fraud.

According to Tyco, Mutual's *Walker Process* claim fails because it rests on "*constructive knowledge* based on *inferences* drawn from *circumstantial evidence*." Br. 65. But Tyco's argument rests on several mistaken premises—concerning both the law and the nature of our argument.

1. Whether or not constructive knowledge is sufficient to support a *Walker Process* claim—an issue the case law leaves open (Opening Br. 54 n.9)—our claim

*Confidential Information Redacted*

does not depend on such knowledge.[10]  Tyco did not just have *access* to every piece of evidence showing Sandoz's fraud, including the Memo for the Record (which disclosed invalidating prior art), ███████████████████ the FDA Approvable Letter, and "the entire record with FDA."  A5929-31; 642 F.3d at 1372 & n.2.  Tyco reviewed that evidence █████████████████████ █████████████, and with sufficient care to know that competitors could design around the patents █████████.  Opening Br. 55-58.

Moreover, before Tyco sued, Mutual had informed it that the PTO had rejected patent claims as obvious in light of prior art that taught "administration of 10 mg of temazepam to patients" and "a reduced amount of temazepam to humans" (A5979), while allowing other patent claims based on a mistaken belief that *combining* a reduced dosage and a *novel* particle size was not obvious.  A5828, A5856, A5872.  Thus, while Mutual's notice letter did not formally challenge validity, it clearly informed Tyco that the PTO relied on a mistake of fact—one that Sandoz would have recognized and had an obligation to correct.

This evidence easily supports a finding that Tyco knew of Sandoz's fraud, and it clears the hurdle for showing *deliberate indifference* to the risk of fraud by an even greater margin.  Without citing authority, Tyco asserts that "[a]wareness of

---

[10]  Tyco (Br. 65) cites no authority holding that constructive knowledge cannot support a *Walker Process* claim, and the leading antitrust scholars disagree. Areeda & Hovenkamp, *Antitrust Law* ¶705k (2013); Opening Br. 54 n.9.

a significant risk of fraud is not equivalent to actual knowledge of fraud." Br. 66. But Tyco ignores this Court's holding that "deliberate indifference of a known risk is not different from actual knowledge, but is a form of actual knowledge." *SEB*, 594 F.3d at 1377.

2.  Tyco's suggestion that knowledge must be proven by direct evidence is equally unfounded. "[D]irect evidence of knowledge is not required" (*id.* at 1380), and in practice "knowledge must almost always be proved[] by circumstantial evidence." *Santos*, 553 U.S. at 521. Even in criminal cases, "knowledge can be inferred from circumstantial evidence." *Staples*, 511 U.S. at 615 n.11. Tyco offers no reason to impose a uniquely stringent standard in *Walker Process* cases.

3.  Finally, Tyco suggests that Mutual presented additional evidence for the first time on appeal. Br. 63. Not so. Every piece of evidence that we rely upon here was cited in Mutual's summary judgment submissions below. A5527-28; A5561-63.

### B.    Mutual's evidence created a triable issue as to Sandoz's intent to defraud the PTO.

Unable to defend its victory on *Walker Process*'s knowledge prong, Tyco urges an alternative ground for affirmance—that Mutual's evidence fails to create a triable issue on Sandoz's *intent* to defraud.[11] Notably, Tyco does not dispute Mu-

---

[11] Tyco repeatedly, but falsely, says it "successfully argued" below that "there was no genuine issue of disputed fact as to whether Tyco's predecessor in ownership of

tual's evidence or offer a good-faith explanation for Sandoz's conduct. Instead, citing *Therasense*'s discussion of the intent-to-defraud standard, Tyco asserts that Mutual "cannot point[] to any evidence of the requisite 'deliberately planned and carefully executed scheme' by Sandoz to defraud the USPTO." Br. 64.

Mutual's proof, however, easily amounts to "clear and convincing evidence that the [patent] applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "Direct evidence of intent to deceive or mislead the PTO is 'rarely available,'" but intent may be inferred from the "'surrounding circumstances.'" *Purdue Pharma L.P. v. Endo Pharms. Inc.,* 438 F.3d 1123, 1133-34 (Fed. Cir. 2006) (citation omitted); *Paragon Podiatry Lab., Inc. v. KLM Labs. Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993) ("'[S]moking gun' evidence is not required"). Indeed, "it would be naive to expect that someone who had sought to deceive the PTO would state in a deposition that this had been his intent." *Kaiser Found. Health Plan Inc. v. Abbott Labs. Inc.*, 552 F.3d 1033, 1050 (9th Cir. 2009).

Tyco does not dispute what Sandoz knew—that the claimed invention used the same SSA and particle size as Restoril, and that temazepam doses between 5

---

the Tyco Patents had committed fraud on the USPTO." Br. 12-13; *see also id*. at 62. The district court's decision focused solely on the sufficiency of Mutual's evidence of *Tyco's knowledge* of Sandoz's fraud—a separate element. A13-16.

and 15mg had long been used overseas to treat insomnia in the elderly. Opening Br. 52. A reasonable factfinder could infer materiality from the fact that Sandoz, hoping to overcome a rejection based on other prior art, misrepresented that the temazepam it claimed was physically different from that disclosed by the prior art Restoril capsules. And a reasonable factfinder could infer that Sandoz withheld this information deliberately based on this misrepresentation and ████████████

███████████████ the FDA Approvable Letter that would have revealed the truth.

In *Nobelpharma*, evidence that the patent applicant "inexplicably" "deleted all reference" to a material prior art reference from its disclosure to the Patent Office was sufficient to show fraudulent intent. 141 F.3d at 1072; *see also Mosey*, 476 F.3d at 1348 ("*Nobelpharma* serves as a good example of the sort of facts that do prove *Walker Process* fraud by omission."). Similarly, in *Aventis Pharma S.A. v. Hospira, Inc.*, a post-*Therasense* case, this Court sustained a finding of intent where evidence showed that the inventor knew of the prior art references and their materiality, and the factfinder "rejected" the inventor's "explanation for withholding" them. 675 F.3d 1324, 1335-37 (Fed. Cir. 2012). As these cases confirm, a material factual dispute precludes summary judgment here.

## CONCLUSION

The district court's judgment should be reversed, and the case remanded for trial.

Respectfully submitted,

/s/ Steffen N. Johnson

JAMES F. HURST

Winston & Strawn LLP

35 West Wacker Drive

Chicago, IL 60601

(312) 558-5600

jhurst@winston.com

STEFFEN N. JOHNSON

CHARLES B. KLEIN

JOHN K. HSU

EIMERIC REIG-PLESSIS

Winston & Strawn LLP

1700 K Street N.W.

Washington, D.C. 20006

(202) 282-5000

sjohnson@winston.com

cklein@winston.com

jhsu@winston.com

ereigplessis@winston.com

Counsel for Defendants-Appellants

OCTOBER 4, 2013

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing *Nonconfidential Reply Brief for Defendants-Appellants* were caused to be served on October 4, 2013, on counsel listed below by electronic mail and by the CM/ECF system:

PETER E. STRAND
*Shook, Hardy & Bacon LLP*
*1155 F Street, N.W.*
*Suite 200*
*Washington, D.C. 20004*
*(202) 783 (8400)*
*pstrand@shb.com*

JOHN D. GARRETSON
REBECCA J. SCHWARTZ
*Shook, Hardy & Bacon LLP*
*2555 Grand Boulevard*
*Kansas City, Missouri 64108-2613*
*(816) 474-6550*
*jgarretson@shb.com*
*rschwartz@shb.com*

Dated: OCTOBER 4, 2013

*/s/ Steffen N. Johnson*
STEFFEN N. JOHNSON
*Winston & Strawn LLP*
*1700 K Street, N.W.*
*Washington, D.C. 20006*
*(202) 282-5000*
*sjohnson@winston.com*

*Counsel for Defendants-Appellants*
*Mutual Pharmaceutical Company, Inc. and*
*URL Research Laboratories, Inc.*

## CERTIFICATE OF COMPLIANCE

I, Steffen N. Johnson, counsel for Defendants-Appellants, certify pursuant to Fed. R. App. P. 32(a)(7) and Federal Circuit Rule 32(b) that this brief contains 7,000 words, as counted by Microsoft Word 2010. The text of the brief and footnotes are in 14-point Times New Roman font.


Dated:  OCTOBER 4, 2013                    */s/ Steffen N. Johnson*
                                         STEFFEN N. JOHNSON
                                         *Winston & Strawn LLP*
                                         *1700 K Street, N.W.*
                                         *Washington, D.C. 20006*
                                         *(202) 282-5000*
                                         *sjohnson@winston.com*

                                         *Counsel for Defendants-Appellants*
                                         *Mutual Pharmaceutical Company, Inc. and*
                                         *URL Research Laboratories, Inc.*